UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



UNITED STATES OF AMERICA, ex rel.
WESTERN NEW YORK FOUNDATION FOR
FAIR CONTRACTING, INC.,

                          Plaintiffs,

              v.                                          11-CV-0821(S)

ARSENAL CONTRACTING, LLC
ALLIANCE CONTRACTING, LLC
ZOLADZ CONSTRUCTION CO., INC.,

                          Defendants.

---

### UNITED STATES' NOTICE OF INTERVENTION IN PART
### FOR PURPOSES OF SETTLEMENT AND DECLINATION IN PART

The United States, Relator, and Defendants have reached a settlement agreement to resolve this action (See Attachment A).    In light of this agreement, and for the purpose of effectuating and formalizing that resolution, pursuant to the False Claims Act, 31 U.S.C. §§ 3730(b)(2) and (4), the United States respectfully advises the Court of its decision to intervene in part and decline in part for the purposes of settlement.

Specifically, the United States intervenes in this action with respect to civil claims predicated upon the following factual allegations (the "Covered Conduct): The United States contends that Arsenal Contracting LLC ("Arsenal") fraudulently induced the United States Department of Veterans Affairs ("the VA") and United States Department of Defense ("DOD") to award contracts set aside for service-disabled veteran-owned small businesses

("SDVOSBs") for which Arsenal was ineligible because it was a sham company that never satisfied mandatory SDVOSB requirements (including being controlled by a service-disabled veteran). The United States contends that Arsenal was nonetheless able to obtain such contracts because it falsely certified that it was a legitimate SDVOSB, notwithstanding that Arsenal had very few employees of its own and used Alliance Contracting, LLC ("Alliance") and Zoladz Construction Company, Inc. ("ZCCI") personnel to perform contracts. The United States alleges that, after improperly receiving the SDVOSB contracts for which it was ineligible, Arsenal subcontracted virtually all of the work under these contracts to Alliance and ZCCI despite contractual requirements that it spend "at least 15 percent of the cost of the contract performance incurred for personnel" on its own employees. In addition, the United States contends that John Zoladz installed a service-disabled veteran as a figurehead for Arsenal, while Zoladz controlled the company's general strategy and finances and otherwise directed the scheme in which Arsenal obtained contracts for which it was not eligible in order to subcontract the work to Alliance and ZCCI. As a result of the foregoing, the United States alleges that Arsenal, Alliance, ZCCI, and Zoladz submitted, or caused the submission of false claims for payment to the VA and DOD for work related to the SDVOSB contracts fraudulently obtained by Arsenal.

The United States declines intervention with respect to all other claims alleged in this action apart from those based upon the Covered Conduct.

Under the terms and conditions of the settlement agreement among the parties, the United States and Relator will file a Stipulation of Dismissal following the initial settlement

payment from the defendants.

In light of the settlement agreement reached among the parties, the United States does not presently intend to file a complaint in intervention but reserves the right to seek leave to file such a complaint in the event that Arsenal Contracting, LLC, Alliance Contracting, LLC, Zoladz Construction Co, Inc. and John Zoladz do not pay the full settlement amount consistent with the terms of the settlement agreement.

Finally, the United States hereby requests that the Court unseal the Relator's Complaint, this Notice of Intervention, and all subsequent filings following this Notice of Intervention.   The United States respectfully requests all other filings in this matter be unsealed except that the Government requests that Government's Memorandums in Support of Seal Extension requests dated July 11, 2016 and January 13, 2017 remain under seal as those filings relate to an entity that was not named as a defendant in the *qui tam* and is not a party to this settlement.   A Proposed Order is filed herewith.

Respectfully submitted,

JAMES P. KENNEDY, JR.
Acting United States Attorney

September 20, 2017

BY:   KATHLEEN A. LYNCH
Assistant United States Attorney
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5822

3

## CERTIFICATE OF SERVICE

This is to certify that copies of the foregoing Notice of Intervention in Part for Purposes of Settlement and Declination in Part (filed *in camera* and under seal) was mailed by first class mail, postage prepaid to:

Catherine Creighton, Esq.
Creighton Johnsen & Giroux
295 Main Street
Buffalo, NY 14203

Jessica A. Olszewski
Paralegal

4

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and the United States Small Business Administration (the "United States"); Arsenal Contracting, LLC ("Arsenal"); Alliance Contracting, LLC ("Alliance"); Zoladz Construction Company, Inc. ("ZCCI"), John Zoladz ("Zoladz"); and the New York Foundation for Fair Contracting, formerly known as the Western New York Foundation for Fair Contracting ("Relator"), through their authorized representatives. Collectively, all of the above will be referred to as "the Parties."

## RECITALS

A.       Arsenal is a limited liability company with its principal place of business located at 13600 Railroad Street, Alden, New York 14004. Alliance is a limited liability company with its principal place of business located at 13600 Railroad Street, Alden, New York 14004. ZCCI is a company incorporated in New York with its principal place of business located at 13600 Railroad Street, Alden, New York 14004. Zoladz is a resident of Darien, New York and owns 49 percent of Arsenal, 51 percent of Alliance, and 100 percent of ZCCI. Between 2008 and 2011, Arsenal received approximately $21 million in government contracts that were set aside for service-disabled veteran-owned small businesses ("SDVOSBs").

B.       On September 28, 2011, Relator filed a *qui tam* action in the United States District Court for the Western District of New York captioned *United States ex rel. Western New York Foundation for Fair Contracting vs. Arsenal Contracting, LLC; Alliance Contracting, LLC; and Zoladz Construction Company, Inc.* (No. 11-CV-2081-S), pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Civil Action"). Relator alleged that Arsenal was not eligible for the contracts it received because a service-disabled veteran did

1

not manage or control the company and Arsenal merely served as a shell company for Alliance and ZCCI.

      C.     The United States contends that it has certain civil claims against Arsenal, Alliance, ZCCI, and Zoladz arising out of conduct during the time period February 1, 2008, through May 31, 2014, that is set forth in this Paragraph below (referred to herein as the "Covered Conduct"):

> The United States contends that Arsenal fraudulently induced the United States Department of Veterans Affairs ("the VA") and United States Department of Defense ("DOD") to award contracts set aside for SDVOSBs for which Arsenal was ineligible because it was a sham company that never satisfied mandatory SDVOSB requirements (including being controlled by a service-disabled veteran). The United States contends that Arsenal was nonetheless able to obtain such contracts because it falsely certified that it was a legitimate SDVOSB, notwithstanding that Arsenal had very few employees of its own and used Alliance and ZCCI personnel to perform contracts. The United States alleges that, after improperly receiving the SDVOSB contracts for which it was ineligible, Arsenal subcontracted virtually all of the work under these contracts to Alliance and ZCCI despite contractual requirements that it spend "at least 15 percent of the cost of the contract performance incurred for personnel" on its own employees. In addition, the United States contends that Zoladz installed a service-disabled veteran as a figurehead for Arsenal, while Zoladz controlled the company's general strategy and finances and otherwise directed the scheme in which Arsenal obtained contracts for which it was not eligible in order to subcontract the work to Alliance and ZCCI. As a result of the foregoing, the United States alleges that Arsenal, Alliance, ZCCI, and Zoladz submitted, or caused the submission of false claims for payment to the VA and DOD for work related to the SDVOSB contracts fraudulently obtained by Arsenal.

      D.     This Settlement Agreement is neither an admission of liability by Arsenal, Alliance, ZCCI, or Zoladz, nor a concession by the United States that its claims are not well founded.

      E.     Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

      F.     To avoid the delay, uncertainty, inconvenience, expense, and collateral consequences of protracted litigation of the above claims, and in consideration of the mutual

promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

<u>TERMS AND CONDITIONS</u>

1.      On behalf of Arsenal, Alliance, ZCCI, and Zoladz (collectively, "the Defendants"), Zoladz shall pay to the United States $3 million, plus interest accruing at 1.11% per annum from June 6, 2017 (the "Settlement Amount"). The Defendants agree to be jointly and severally liable for the Settlement Amount and the payments due under this Agreement. The Settlement Amount shall be paid as follows:

a.      Within (7) days after the Effective Date of this Agreement, the Defendants shall pay the United States the amount of $100,000, and thereafter make principal payments with interest according to the payment schedule attached as Exhibit A (the "Payment Schedule").

b.      All payments set forth in the Payment Schedule shall be made to the United States by electronic funds transfer pursuant to written instructions to be provided by the Department of Justice. The entire balance of the Settlement Amount, or any portion thereof, plus any interest accrued on the principal as of the date of any prepayment, may be prepaid without penalty.

c.      If the Defendants fail to make any of the payments set forth in Exhibit A at the specified time, the Defendants shall have 30 days to cure the default. If the default is not cured within the 30-day period, the remaining unpaid principal portion of the Settlement Amount shall become accelerated and immediately due and payable, with interest at a simple rate of 1.11% per annum from the effective date of this Agreement to the date of default, and interest accruing at a simple rate of 12% per annum, compounded

annually, from the date of default on the remaining unpaid total. The Defendants shall also agree to the filing of a Consent Judgment, in the form attached as Exhibit B.

  d. In the event of a default that is not cured within 30 days, the United States, at its sole discretion, may (a) pursue any and all actions for collection as it may choose, including, without limitation, filing an action for specific performance of this Agreement; (b) offset the remaining unpaid balance of the Settlement Amount (inclusive of interest) from any amounts due or owing to the Defendants by any department, agency, or agent of the United States; and (c) file the Consent Judgment in the form attached as Exhibit B in the United States District Court for the Western District of New York. The United States may exercise any of these options, either individually or in concert. The Defendants agree not to contest any collection undertaken by the United States pursuant to this Paragraph, and to pay the United States all reasonable costs incurred in any such collection action, including reasonable attorney's fees and expenses.

  e. Notwithstanding the forgoing, in the event of a default that is not cured within 30 days, the Small Business Administration may, in its sole discretion, debar any and all of the Defendants under 2 CFR § 180.800 until the Defendants pay the remaining Settlement Amount (inclusive of interest) and all reasonable collection costs, including reasonable attorney's fees and expenses. The Defendants waive any further notice to such debarment and agree not to contest it administratively or in any state or federal court. In case of debarment under this Paragraph, reinstatement is not automatic. If any of the Defendants wishes to apply to reinstatement at the end of the period of debarment, that Defendant must, therefore, submit a written request for reinstatement to the Small Business Administration in accordance with applicable regulations. No Defendant will

be reinstated unless the Small Business Administration approves such request. The option for debarment as defined in this Paragraph is in addition to, and not in lieu of, the options identified in this Agreement or otherwise available.

2.      Conditioned upon the United States receiving the initial payment in the amount of $100,000 from the Defendants, as described in Paragraph 1.a, above, and set forth in the Payment Schedule, and as soon as feasible after receipt, the United States shall pay $15,000 to Relator by electronic funds transfer. Contingent upon the United States receiving each additional payment from the Defendants identified in the Payment Schedule, as soon as feasible after receipt of each payment, the United States agrees to pay to Relator 15% of each such payment. No other relator payments shall be made by the United States with respect to the matters covered by this Agreement.

3.      Following the effective Date of the Agreement and receipt of written instructions from Relator, the Defendants agree to pay Relator a total of $35,000, pursuant to 31 U.S.C. 3730(d), for expenses and attorney's fees and costs arising from the filing of Relator's *qui tam* action.

4.      Subject to the exceptions in Paragraph 6 (concerning excluded claims), below, and conditioned upon the Defendants' full payment of the Settlement Amount, the United States releases the Defendants from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733, or the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; as well as the common law theories of payment by mistake, unjust enrichment, and fraud.

5.      Subject to the exceptions in Paragraph 6 (concerning excluded claims), below, and conditioned upon the Defendants' full payment of the Settlement Amount, Relator, for itself

and for its heirs, successors, attorneys, agents, and assigns, releases the Defendants and their collective officers, agents, employees, heirs, personal representatives, successors, attorneys, agents, and assigns as of the date of execution of this Settlement Agreement, from any civil monetary claim Relator has on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733.

6.     Notwithstanding the releases given in Paragraphs 4 and 5 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

    a.    Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b.    Any criminal liability;

    c.    Except as explicitly stated in this Agreement, any administrative liability, including the suspension and debarment rights of any federal agency;

    d.    Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

    e.    Any liability based upon obligations created by this Agreement;

    f.    Any liability of individuals not already a party to this Agreement;

    g.    Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

    h.    Any liability for failure to deliver goods or services due; and

    i.    Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

7.      Relator and its heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B).  Conditioned upon Relator's receipt of the payment described in Paragraph 2, Relator and its heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

8.      Relator, for itself and its heirs, successors, attorneys, agents, and assigns, releases the Defendants and their collective officers, agents, employees, heirs, personal representatives, successors, attorneys, agents, and assigns from any liability to Relator arising from the filing of the Civil Action, or under 31 U.S.C. § 3730(d) for expenses or attorney's fees and costs.

9.      The Defendants have provided sworn financial disclosure statements ("Financial Statements") to the United States and the United States has relied on the accuracy and completeness of those Financial Statements in reaching this Agreement.  The Defendants warrant that the Financial Statements are complete, accurate, and current as of the date they were provided to the United States.  If the United States learns of asset(s) in which the Defendants had an interest at the time of this Agreement that were not disclosed in the Financial Statements, or if the United States learns of any misrepresentation by the Defendants on, or in connection with, the Financial Statements, and if such nondisclosure or misrepresentation changes the estimated net worth set forth in the Financial Statements by $150,000 or more, the United States may at its option:  (a) rescind this Agreement and file suit based on the Covered Conduct, or (b) let the Agreement stand and collect the full Settlement Amount plus one hundred percent (100%) of the

7

value of the net worth of the Defendants previously undisclosed. The Defendants agree not to contest any collection action undertaken by the United States pursuant to this provision, and immediately to pay the United States all reasonable costs incurred in such an action, including attorney's fees and expenses.

10.     In the event that the United States, pursuant to Paragraph 9 (concerning disclosure of assets), above, opts to rescind this Agreement, the Defendants agree not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the United States within 120 calendar days of written notification to the Defendants that this Agreement has been rescinded, and (b) relate to the Covered Conduct, except to the extent these defenses were available on the Effective Date of this Agreement.

11.     The Defendants waive and shall not assert any defenses they may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

12.     The Defendants fully and finally release the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that the Defendants have asserted, could have asserted,

or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation.

13.     The Defendants fully and finally release the Relator from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that the Defendants have asserted, could have asserted, or may assert in the future against the Relator, related to the allegations in the Relator's *qui tam* Complaint and the Relator's investigation and prosecution thereof.

14.     a. Unallowable Costs Defined:  All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of the Defendants, and their present or former officers, directors, employees, shareholders, and agents in connection with:

    (1)     the matters covered by this Agreement;

    (2)     the United States' audit(s), civil investigation(s), and criminal investigation(s)) of the matters covered by this Agreement;

    (3)     the Defendants' investigation, defense, and corrective actions undertaken in response to the United States' audit(s), civil investigation(s), (and criminal investigation(s)) in connection with the matters covered by this Agreement (including attorney's fees);

    (4)     the negotiation and performance of this Agreement; and

    (5)     the payments the Defendants make to the United States pursuant to this Agreement and any payments that the Defendants may make to Relator, including costs and attorneys' fees,

are unallowable costs for government contracting purposes (hereinafter referred to as "Unallowable Costs").

     b.     <u>Future Treatment of Unallowable Costs</u>:  Unallowable Costs will be separately determined and accounted for by the Defendants, and the Defendants shall not charge such Unallowable Costs directly or indirectly to any contract with the United States.

     c.     <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: Within 90 days of the Effective Date of this Agreement, the Defendants shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs included in payments previously sought by the Defendants or any of their subsidiaries or affiliates from the United States.  The Defendants agree that the United States, at a minimum, shall be entitled to recoup from the Defendants any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted requests for payment.  The United States, including the Department of Justice and/or the affected agencies, reserves its rights to audit, examine, or re-examine the Defendant's books and records and to disagree with any calculations submitted by the Defendants or any of their subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by the Defendants, or the effect of any such Unallowable Costs on the amount of such payments.

     15.     The Defendants agree to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Agreement.  Upon reasonable notice, the Defendants shall encourage, and agrees not to impair, the cooperation of its directors, officers, and employees, and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals.  The Defendants further agree to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning

any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf.

16.     The Defendants warrant that they have reviewed their financial situation and that they are currently solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall remain solvent following payment to the United States of the Settlement Amount. Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to the Defendants, within the meaning of 11 U.S.C. § 547(c)(1), and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which the Defendants were or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

17.     If within 91 days of the Effective Date of this Agreement or of any payment made under this Agreement, any of the Defendants commence, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of any of the Defendants' debts, or seeking to adjudicate any of the Defendants as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for any of the Defendants or for all or any substantial part of any of the Defendants' assets, the Defendants agree as follows:

a.     The Defendants' obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and the Defendants shall not argue or otherwise take the position in

any such case, proceeding, or action that: (i) any of the Defendants' obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) any of the Defendants were insolvent at the time this Agreement was entered into, or became insolvent as a result of the payment made to the United States; or (iii) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to the Defendants.

        b.     If the Defendants' obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the United States, at its sole option, may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against the Defendants for the claims that would otherwise be covered by the releases provided in Paragraphs 4 and 5, above. The Defendants agree that (i) any such claims, actions, or proceedings brought by the United States are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceedings described in the first clause of this Paragraph, and the Defendants shall not argue or otherwise contend that the United States' claims, actions, or proceedings are subject to an automatic stay; (ii) the Defendants shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceeding that are brought by the United States within 120 calendar days of written notification to the Defendants that the releases have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on the Effective Date of this Agreement; and (iii) the United States has a valid claim against the Defendants in the amount of the unpaid balance remaining from the $3,000,000.00 agreed to herein, and the United States may pursue its claim in the case, action, or

proceeding referenced in the first clause of this Paragraph, as well as in any other case, action, or proceeding.

        c.     The Defendants acknowledge that their agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement.

18.    This Agreement is intended to be for the benefit of the Parties only.

19.    Upon receipt of the payment described in Paragraph 1, above, the United States and Relator shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1) as follows:  the dismissal shall be (i) with prejudice as to the United States' and Relator's claims as to the Covered Conduct, and (ii) without prejudice to the United States and with prejudice as to Relator as to all other claims.

20.    Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

21.    Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

22.    This Agreement is governed by the laws of the United States.  The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Western District of New York.  For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

23.    This Agreement constitutes the complete agreement between the Parties.  This Agreement may not be amended except by written consent of the Parties.

24.    The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

25.    This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

26.    This Agreement is binding on the Defendants' successors, transferees, heirs, and assigns.

27.    This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

28.    All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public upon the United States' sole discretion.

29.    This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement).  Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.


[Signature Pages Follow]

THE UNITED STATES OF AMERICA

DATED: 9/18/17          BY: _____
                            Ben Young
                            Trial Attorney
                            Commercial Litigation Branch
                            Civil Division
                            United States Department of Justice

DATED: 9/19/17          BY: _____
                            Kathleen Lynch
                            Assistant United States Attorney
                            Western District of New York

DATED: 9/18/17          BY: _____
                            David Fishman
                            Assistant General Counsel for Litigation
                            United States Small Business Administration

15

NEW YORK FOUNDATION FOR FAIR CONTRACTING (NYFFC) - RELATOR

DATED: 9-19-2017     BY: _____
                         Gary Swain
                         On behalf of the New York Foundation for Fair
                         Contracting

DATED: 9-19-2017 BY: _____
                         Catherine Creighton
                         Creighton Johnsen & Giroux
                         Counsel for Relator

16

ARSENAL, ALLIANCE, AND ZCCI - DEFENDANTS

DATED: 9/13/17          BY: _____
                             John Zoladz
                             On behalf of Arsenal, Alliance, and ZCCI


DATED: 9/14/17          BY: _____
                             David Robbins
                             Crowell & Moring LLP



JOHN ZOLADZ - DEFENDANT

DATED: 9/13/17          BY: _____
                             John Zoladz


DATED: 9/14/17          BY: _____
                             Rod Personius
                             Personius Melber LLP

17

## EXHIBIT A

| No | Quarter | Payment | 1.11% Interest | Principal | Balance |
|---|---|---|---|---|---|
| | | | **Arsenal, Alliance, ZCCI, and John Zoladz** | | |
| | | | **Quarterly Payment Schedule** | | |
| | 6-Jun-17 | | | | 3,000,000.00 |
| 1 | 19-Sep-17 | 100,000.00 | 9,670.68 | 90,329.32 | 2,909,670.68 |
| 2 | 18-Dec-17 | 157,425.54 | 8,074.34 | 149,351.20 | 2,760,319.48 |
| 3 | 18-Mar-18 | 157,425.54 | 7,659.89 | 149,765.65 | 2,610,553.83 |
| 4 | 16-Jun-18 | 157,425.54 | 7,244.29 | 150,181.25 | 2,460,372.58 |
| 5 | 14-Sep-18 | 157,425.54 | 6,827.53 | 150,598.01 | 2,309,774.57 |
| 6 | 13-Dec-18 | 157,425.54 | 6,409.62 | 151,015.92 | 2,158,758.65 |
| 7 | 13-Mar-19 | 157,425.54 | 5,990.56 | 151,434.98 | 2,007,323.67 |
| 8 | 11-Jun-19 | 157,425.54 | 5,570.32 | 151,855.22 | 1,855,468.45 |
| 9 | 9-Sep-19 | 157,425.54 | 5,148.92 | 152,276.62 | 1,703,191.83 |
| 10 | 8-Dec-19 | 157,425.54 | 4,726.36 | 152,699.18 | 1,550,492.65 |
| 11 | 7-Mar-20 | 157,425.54 | 4,302.62 | 153,122.92 | 1,397,369.73 |
| 12 | 5-Jun-20 | 157,425.54 | 3,877.70 | 153,547.84 | 1,243,821.89 |
| 13 | 3-Sep-20 | 157,425.54 | 3,451.61 | 153,973.93 | 1,089,847.96 |
| 14 | 2-Dec-20 | 157,425.54 | 3,024.33 | 154,401.21 | 935,446.75 |
| 15 | 2-Mar-21 | 157,425.54 | 2,595.86 | 154,829.68 | 780,617.07 |
| 16 | 31-May-21 | 157,425.54 | 2,166.21 | 155,259.33 | 625,357.74 |
| 17 | 29-Aug-21 | 157,425.54 | 1,735.37 | 155,690.17 | 469,667.57 |
| 18 | 27-Nov-21 | 157,425.54 | 1,303.33 | 156,122.21 | 313,545.36 |
| 19 | 25-Feb-22 | 157,425.54 | 870.09 | 156,555.45 | 156,989.91 |
| 20 | 26-May-22 | 157,425.56 | 435.65 | 156,989.91 | 0.00 |
| | **Total** | **3,091,085.28** | **91,085.28** | **3,000,000.00** | |

**EXHIBIT B**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA, ex rel.
WESTERN NEW YORK FOUNDATION FOR
FAIR CONTRACTING, INC.,

Plaintiffs,

v.                                              11-CV-0821(S)

ARSENAL CONTRACTING, LLC
ALLIANCE CONTRACTING, LLC
ZOLADZ CONSTRUCTION CO., INC.,

Defendants.

---

<b>CONSENT JUDGMENT</b>

This matter is before the Court upon the consent of the United States of America, acting

through the Department of Justice and on behalf of the Small Business Administration

(collectively, the "United States") and Defendants Arsenal Contracting LLC, Alliance

Contracting LLC, Zoladz Construction Company, Inc., and John Zoladz.  The United States and

the Defendants are collectively referred to herein as "the Parties."  The Defendants consent to

entry of this judgment having been established by virtue of the Settlement Agreement attached as

Exhibit A hereto, it now appears to the Court as follows:

　　　　1.  This Court has jurisdiction over the Parties as well as over the subject matter of this

action.

　　　　2.  Arsenal is a limited liability company with its principal place of business located at

13600 Railroad Street, Alden, New York 14004.  Alliance is a limited liability company with its

principal place of business located at 13600 Railroad Street, Alden, New York 14004. ZCCI is a

company incorporated in New York with its principal place of business located at 13600

Railroad Street, Alden, New York 14004. Zoladz is a resident of Darien, New York and owns

49 percent of Arsenal, 51 percent of Alliance, and 100 percent of ZCCI. Between 2008 and

2011, Arsenal received approximately $21 million in government contracts that were set aside

for service-disabled veteran-owned small businesses ("SDVOSBs").

3. A settlement agreement (Agreement) was prepared, signed by the Parties, and took

effect on _____.

4. The Agreement calls for installment payments by the Defendants over a period of five

years. The Defendants are in default under the Agreement, having failed to timely meet their

payment obligations. Notice of default has been given to the Defendants and the thirty-day

period for curing the default provided by the Agreement has expired.

5. Pursuant to the attached Agreement, the Defendants agreed that in the event of a

default under the Agreement, a judgment would be entered in favor of the United States and

against the Defendants, for the remaining unpaid balance of the Agreement. Such a default has

occurred.

**WHEREFORE, IT IS HEREBY ORDERED, ADJUDGED and DECREED** that judgment be entered in favor of the United States and against defendants Arsenal Contracting LLC, Alliance Contracting LLC, Zoladz Construction Company, Inc., and John Zoladz, in the amount of $_____, as set forth in the attached Agreement, for which let execution issue.

**ORDERED, ADJUDGED and DECREED** at Buffalo, New York, this _____ day of _____, 2017, in chambers in Buffalo, New York.

**IT IS SO ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**